## WRIGHT vs. HIS CREDITORS.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF
NEW-ORLEANS.

A commander of a steam-boat, who speculates in the purchase and sale of
sugar, cotton and salt, which he furnishes to planters and others, at their
request, and keeps no books but those of the boat, will not be considered
a merchant or trader, in the technical or legal sense of the term, and is
dispensed from producing his books in court, when applying for the
benefit of the insolvent laws.

A sale by a debtor on the eve of insolvency, of shares in a steam-boat, will
not be deemed in fraud of creditors, when by the evidence it appears to
have been made for cash.

EASTERN DIST.
*May*, 1838.

WRIGHT
*vs.* ·
HIS CREDITORS.

'On the 5th day of December, 1837, the plaintiff filed his petition and bilan, praying for the benefit of the insolvent laws of this state, for the relief of debtors in actual custody.

Metcalf, an opposing creditor, denied to the insolvent a discharge, or the benefit of the insolvent laws, and alleged various grounds of accusation and fraud, as set forth in the opinion of the court, which follows :

On the issue made up and submitted to the jury, a verdict of *guilty* was brought in.

From the judgment confirming' this verdict, the insolvent debtor appealed.

*R. M. Carter*, for plaintiff and appellant, contended, that the judgment of the court below on the verdict of the jury against the plaintiff, on an accusation of fraud, should be set aside, on the following grounds :

1. There was no proof that the insolvent was a trader and merchant, within the meaning of the law, or even within the meaning ordinarily applied to these terms, and therefore he was not bound to produce his books, etc.

2. There was no proof to sustain any of the allegations set forth in the opposition filed by the opposing creditor.

3. There was not the least shadow of testimony to show any legal fraud upon the part of the insolvent, to justify the verdict of the jury.

*F. B. Conrad*, for the opposing creditor.

1. The verdict of the jury in this case, is fully borne out by the evidence. It is proved, that within the three months prior to his arrest, the insolvent transferred to Hepburn, who stands on his bilan as a creditor, a portion of the steamboat Invincible. This was giving preference prohibited by the law, was in fraud of the other creditors, and excludes the insolvent from all benefit of our insolvent laws. 1 *Moreau's Digest*, 572, *section* 17.

But it is contended, that this transfer is not shown to have been made " in contemplation" of those laws. It is, however, the general principle of our law, to presume all such con-

# 310                    CASES IN THE SUPREME COURT

tracts within the three months, as in fraud of other creditors. 11 *Louisiana Reports,* 479.

2. The insolvent returned a false and fraudulent schedule. It is proved by the testimony of Brown, that the insolvent purchased his (Brown's) interest of one half of the steamboat Invincible, for the sum of thirty-two thousand five hundred dollars. It is further shown, that in addition, the insolvent owned another portion of three-sixteenths of said boat, which he assigned to Hepburn : so that he was the owner of a larger portion of a valuable steam-boat, and the only account which he furnishes of his portion, is the fraudulent assignment of the three-sixteenths to Hepburn. He has given no account whatever of the balance. If sold, where are the proceeds ? If not sold, he should have surrendered her to his creditors. It is further shown, that the insolvent made a shipment of merchandize to Cincinnati, of which no mention is made in his schedule. By this he has forfeited all claims to the benefit of our insolvent laws. 1 *Moreau's Digest,* 573, *section* 19.

3. The opposing creditors called for the books, vouchers, and accounts of the insolvent. He dealt largely in cotton, and other produce ; states a loss in his dealings in cotton alone of five thousand dollars ; was a large owner in a steamboat, engaged in carrying freight for hire ; and yet it is pretended that he had no books, vouchers, nor accounts. It is no where shown that he did not keep books, etc., and with these heavy transactions before them, and in the absence of all proof to the contrary, this court will presume that he had books and vouchers, and his refusal to produce them, raises a strong presumption of fraud.

*Grymes,* argued in support of the insolvent's application for a discharge.

*Carleton, J.,* delivered the opinion of the court.

This is an application for the benefit of the act of the 25th of March, 1808, intended for the relief of insolvent debtors in actual custody.

The creditors opposed the petitioner's release on the following charges of fraud :

1st. That being a merchant or trader, he had not produced in court, all his books and accounts, whereby he fraudulently withheld from his creditors the true situation of his affairs.

2d. That he had assigned and made over, within three months previous to his arrest and imprisonment, and at a time when he knew he was in insolvent circumstances, to one or more of his creditors, certain portions of his property with a view of securing them to the prejudice and fraud of his other creditors.

3d. That he has filed in court a false and fraudulent schedule ; that he has concealed a part of his estate or effects from his creditors, particularly a large sum of money, which was seen in his possession a short time prior to his surrender, belonging to said insolvent, and of which he has made no mention in his said schedule, and that said insolvent is still in possession of a large sum of money, which he withholds from his creditors.

4th. That he has been an unfaithful depository.

The petitioner answered by general denial, and prayed for a trial by jury, who rendered the following verdict : " The jury find the defendant guilty of fraud." The judgment of the court followed accordingly, refusing to the petitioner the benefit of the law. After an ineffectual attempt to obtain a new trial he appealed.

It does not appear to us that the petitioner was a merchant or trader in the strictly legal sense of the term. He seems to have speculated on the purchase and sale of sugar, cotton and salt, and on one occasion to have attempted a speculation on groceries, jointly, with M'Kinnell. The salt he bought and furnished to. planters on the river, at their request. On his cotton and sugar, he sustained heavy losses ; no entry of any of these purchases appear to have been made upon the books of the boat. His regular business was the navigation of the waters of the Mississippi, as commander and part owner of a steam-boat. He kept no books but such as appertained to the boat. His speculations appear

A sale by a debtor on the eve of insolvency, of shares in a steam-boat, will not be deemed in fraud of creditors, when by the evidence it appears to have been made for cash.

to have been occasional and incidental, and such only as the enterprizing genius of our countrymen often prompts them to embark in, independently of their regular pursuits.

With respect to the second ground of opposition, no testimony was produced by the opponents against the insolvent, except a bill of sale of three sixteenths of the steam-boat Invincible, made by him on the 11th July, 1837, to James Hepburn, for the sum of three thousand eight hundred dollars, which the act itself declares to have been paid by the purchaser in ready money. This document is introduced by the opponents and is unaccompanied with any testimony impeaching the fairness of the transaction, which is, therefore, valid, under the last clause of the law cited by the counsel. 1 *Moreau's Digest*, 572, *section* 17. It appears to us the opponents have failed to establish this second ground of opposition.

We think they have not been more successful, in showing the insolvent to have been an unfaithful depository, as alleged in the fourth ground of opposition.

With respect to the specifications in the third charge, we do not think that the creditors have shown the concealment or retention of large sums of money by the insolvent, alleged to have been in his possession a short time before his failure, but it does appear to us, that the testimony with respect to his interest in the steam-boat Invincible, and the groceries bought in conjunction with M'Kinnell, and shipped to the Western country, is altogether vague, contradictory, and unsatisfactory, and that justice requires the cause should be remanded for further proceedings according to law.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be avoided and reversed, that the verdict of the jury be set aside, that this cause be remanded for a trial *de vovo*, and that the appellees pay the costs of this appeal.